IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEANNA JONES,                                          07-CV-1603-BR

            Plaintiff,                              OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.


MERRILL SCHNEIDER
LINDA ZISKIN
14415 S.E. Stark St.
P.O. Box 16310
Portland, Oregon  97292
(503) 697-7019

            Attorneys for Plaintiff


KARIN J. IMMERGUT
United States Attorney
BRITTANIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

1   -  OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**DAPHNE BANAY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

          Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Deanna Jones seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Plaintiff's application

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act.  This Court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a thorough review of the record, the Court

**REVERSES** the decision of the Commissioner and **REMANDS** this matter

pursuant to sentence four of 42 U.S.C. § 405(g) for further

administrative proceedings consistent with this Opinion and

Order.


                    **<u>ADMINISTRATIVE HISTORY</u>**

     Plaintiff filed her application for DIB on September 3,

2004, alleging an onset date of May 11, 2004.  Tr. 59.[1]  The
application was denied initially and on reconsideration.
Tr. 37-38.  An Administrative Law Judge (ALJ) held a hearing on
February 1, 2007.  Tr. 16.  At the hearing, Plaintiff was
represented by an attorney.  Tr. 16.  Plaintiff and a vocational
expert (VE) testified at the hearing.  Tr. 16.

The ALJ issued a decision on February 16, 2007, in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  That decision became the final decision of the
Commissioner on August 25, 2007, when the Appeals Council denied
Plaintiff's request for review.  Tr. 4.


## BACKGROUND

Plaintiff was 53 years old at the time of the hearing.
Tr. 302.  She has a high-school education.  Tr. 94, 302.
Plaintiff has previously worked as an engraver, semiconductor
assembly worker, and wafer-fabricator worker.  She has not worked
since her alleged onset date of May 11, 2004.  Tr. 26, 302.

Except when noted below, Plaintiff does not challenge the
ALJ's summary of the medical evidence.  After reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 18-23.

---

[1] Citations to the official transcript of record filed by
the Commissioner on March 26, 2008, are referred to as "Tr."

3   -  OPINION AND ORDER

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## **DISABILITY ANALYSIS**

### **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially
dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d

at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's residual functional capacity (RFC), which "is an assessment of the sustained, work-related physical and mental activities" that the claimant can still do "on a regular and continuing basis" despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-

6  -  OPINION AND ORDER

related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date. Tr. 18.

At Step Two, the ALJ found Plaintiff has the severe

impairments of obesity and depression with anxiety and the nonsevere impairments of asthma, chronic obstructive pulmonary disease (COPD), emphysema, migraine headaches, and urinary incontinence (UI). Tr. 18.

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meet or equal a Listing. Tr. 23. The ALJ assessed Plaintiff's RFC and found she has no exertional limitations other than being precluded from climbing ropes, ladders, or scaffolding and only occasionally climbing stairs or ramps. The ALJ also found Plaintiff has the nonexertional limitations of needing to work near a restroom and having no more than brief interaction with the general public. Tr. 25.

At Step Four, the ALJ found Plaintiff, even with her limitations, is capable of performing her past relevant work as an engraver or semiconductor assembly/wafer-fabricator worker based on the testimony of the VE. Accordingly, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 26.

The ALJ did not proceed to Step Five. Tr. 26.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to find that Plaintiff's hypothyroidism is a medically determinable impairment

and that Plaintiff's UI and migraine headaches are severe impairments, (2) rejecting the opinion of Licensed Clinical Social Worker (LCSW) Steven Herzberg, and (3) finding Plaintiff's testimony not entirely credible.  Plaintiff also contends new medical evidence submitted to the Appeals Council establishes that she is disabled.

**I.    The ALJ erred at Step Two when he found Plaintiff's hypothyroidism is not a medically determinable impairment and Plaintiff's UI is not a severe impairment, but the ALJ did not err at Step Two when he found Plaintiff's migraine headaches are not a severe impairment.**

Plaintiff contends the ALJ erred at Step Two when he found Plaintiff's alleged hypothyroidism is not a medically determinable impairment and Plaintiff's UI and migraine headaches are not severe impairments.

As noted, the ALJ found at Step Two that Plaintiff has the severe impairments of obesity and depression with anxiety and the nonsevere impairments of asthma, COPD, emphysema, migraine headaches, and UI.  Tr. 18.

**A.    Hypothyroidism.**

Plaintiff contends the ALJ erred at Step Two when he found Plaintiff's alleged hypothyroidism is not a medically determinable impairment.

An "impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  The ALJ, however,

is required to "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. §§ 404.1521(a), 404.1523(a).  "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508(a).  *See also* SSR 06-03p, at *2 (medically determinable impairments must be established by acceptable medical sources).

The ALJ found Plaintiff's alleged hypothyroidism is not a medically determinable impairment on the grounds that Plaintiff discontinued treatment after being treated for "hyperthyroidism"[2] for only a short time, that her hypothyroidism was secondary to menopause and had abated by October 2006, and that she "still managed to lose 15 pounds" during the time she allegedly suffered from hypothyroidism.  Tr. 24.

The record reflects Plaintiff was treated in 2004 for hypothyroidism.  Her condition was first noted in her medical records on April 27, 2004, by an unidentified health-care provider.  Tr. 200.  On April 29, 2004, Psychiatric Mental Health Nurse Practitioner (PMHNP) Paul De Baldo noted Plaintiff had been

_____

[2] All other references to Plaintiff's thyroid problems, both in the ALJ's opinion and in the record, are to hypothyroidism, which is a different condition than hyperthyroidism.  It, therefore, appears this reference to "hyperthyroidism" may be a typographical error.

recently diagnosed with hypothyroidism and that it might be a contributing factor to her depression.  Tr. 147.  Plaintiff was prescribed thyroid medication as early as May 10, 2004.  One of Plaintiff's treating physicians, Joel Simasko, M.D., ordered thyroid tests that were performed on August 19, 2004.  Tr. 144, 163.  On December 15, 2004, Donna Wicher, Ph.D., noted Plaintiff was taking medication for hypothyroidism.  Tr. 166.  In addition, one of Plaintiff's treating physicians, Jeanette Paysse, M.D., noted Plaintiff's hypothyroidism needed followup on July 19, 2006, but the record does not reflect any followup was done.  Tr. 196-97.

Although the ALJ found Plaintiff's hypothyroidism was not a medically determinable impairment because it is secondary to menopause, the record does not reflect any medical evidence of the relationship between Plaintiff's hypothyroidism and menopause.  There is also not anything in the record or in the ALJ's decision that connects Plaintiff's weight loss to hypothyroidism even though the ALJ found Plaintiff's hypothyroidism was not a medically determinable impairment because Plaintiff had lost 15 pounds as of October 18, 2006.  The Court notes the record reflects Dr. Paysse attributed Plaintiff's 15-pound weight loss to a change in her medication and diet rather than to improvement in Plaintiff's hypothyroidism.  Tr. 191-97.

11  -  OPINION AND ORDER

On this record, the Court concludes the ALJ erred when he found Plaintiff's hypothyroidism is not a medically determinable impairment because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

**B.    UI and Migraine Headaches.**

Plaintiff contends the ALJ also erred when he found her UI and migraine headaches are not severe impairments.

As noted, the claimant is not disabled if the Commissioner determines at Step Two that the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a), (b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The Step Two threshold is low. "[A]n impairment can be

considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . . [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, at *2 (Nov. 30, 1984)(citation and quotation marks omitted). The Ninth Circuit describes Step Two as a "*de minimus* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005). "Great care should be exercised in applying the not severe impairment concept." SSR 85-28, at *4.

### 1. UI.

The ALJ found Plaintiff's UI is not a severe impairment on the grounds that Plaintiff was only treated for UI in 2006 and she was still able to work in a production setting during the time she allegedly suffered from UI. Tr. 21.

The record, however, reflects Plaintiff has been treated extensively for UI. She was prescribed oxybutynin to treat her UI as early as August 11, 2004. Tr. 201. Plaintiff also reported to an unidentified health-care provider on February 4, 2005, that her current prescription to treat UI was not covered by her insurance, and the provider subsequently

13  -  OPINION AND ORDER

changed her prescription.  Tr. 177.  Plaintiff also has undergone two surgeries on her bladder to control UI.  Tr. 196, 212, 215.

In addition, Dr. Paysse reported on April 19, 2007, that Plaintiff needs to use the bathroom at unpredictable times and more frequently than would be allowed on regular work breaks because of her UI.  Tr. 288.

On this record, the Court concludes the ALJ erred when he found Plaintiff's UI is not a severe impairment because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

### 2.    Migraine Headaches.

The ALJ found Plaintiff's migraine headaches are not a severe impairment on the ground that Plaintiff underwent only minimal treatment for migraine headaches during the relevant period.  Tr. 20.

The record reflects Plaintiff reported "bad headaches" to an unidentified health-care provider on November 22, 2005.  Plaintiff was prescribed Frova for the headaches.  Tr. 175.  Plaintiff also reported headaches to Dr. Paysse on October 18, 2006, but she did not receive any treatment for them.  Tr. 191.  The record does not reflect any other diagnoses or treatment for migraine headaches.

On this record, the Court concludes the ALJ did not err when he found Plaintiff's migraine headaches are not a severe

14  -  OPINION AND ORDER

impairment because the ALJ provided legally sufficient reasons supported by the record for doing so.

**II.   The ALJ erred when he rejected the opinion of LCSW Herzberg.**

Plaintiff contends the ALJ improperly rejected the opinion of LCSW Herzberg as to Plaintiff's GAF[3] score and "rule-out"[4] diagnoses.

As a licensed clinical social worker, LCSW Herzberg is a medical source.  *See* 20 C.F.R. § 404.1513.  Medical sources are divided into two categories:  "acceptable" and "not acceptable." 20 C.F.R. § 404.1513.  Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 404.1513. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2.

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job).  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31-34 (4th ed. 2000).

[4] A "rule out" diagnosis indicates the health-care provider believed he "lacked sufficient information to diagnose [the p]laintiff with" all of the conditions for which he evaluated the plaintiff.  *Gough v. Metropolitan Life Ins. Co.*, No. 3:03-0158, 2003 WL 23411993, at *11 (M.D. Tenn. Nov. 21, 2003).

The Social Security Administration notes:

> With the growth of managed health care in
> recent years and the emphasis on containing
> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists.  Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when

determining the weight to give an opinion from those "important"

sources include:  the length of time the source has known the

claimant and the number of times and frequency that the source

has seen the claimant; the consistency of the source's opinion

with other evidence in the record; the relevance of the source's

opinion; the quality of the source's explanation of his opinion;

and the source's training and expertise.  SSR 06-03p, at *4.  On

the basis of the particular facts and the above factors, the

ALJ may assign a "not acceptable" medical source either greater

or lesser weight than that of an acceptable medical source.

SSR 06-03p, at *5-*6.  The ALJ, however, must explain the weight

assigned to such sources to the extent that a claimant or

subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,

at *6.

16  -  OPINION AND ORDER

On October 28, 2004, LCSW Herzberg conducted a psychological evaluation of Plaintiff in which he concluded Plaintiff has major depressive disorder, a GAF score of 35, and "rule-out" diagnoses of post-traumatic stress disorder (PTSD) and personality disorder.  Tr. 171-72.

The ALJ did not give any weight to the opinion of LCSW Herzberg.  Tr. 22.  Although the ALJ noted LCSW Herzberg's opinion as a "not acceptable" medical source could be given "some weight" if it was consistent with other medical evidence in the record, the ALJ found LCSW Herzberg's opinion as to Plaintiff's GAF score was not "even remotely consistent with or supported by" the medical record as a whole.  Tr. 22.  The ALJ also rejected LCSW Herzberg's opinion as to the "rule-out" diagnosis of PTSD on the ground that there was not any evidence in the record that reflected Plaintiff had experienced a traumatic event.  Tr. 22.

**A.   GAF Score.**

The record reflects Plaintiff has consistently been assigned a GAF score at 50 or higher and has minimal functional limitations related to her depression.  For example, on April 29, 2004, PMHNP De Baldo noted Plaintiff's presentation and symptoms were consistent with moderate, recurrent depression and she appeared to be improving with medication.  Tr. 147. PMHNP De Baldo assigned Plaintiff a current GAF score of 50 and a long-term GAF score of 65.  Tr. 148.

17  -  OPINION AND ORDER

On May 5, 2004, LCSW Scott Ruplin conducted a mental-health evaluation of Plaintiff.  Tr. 158.  Ruplin noted Plaintiff did not show any indication of psychotic processing or cognitive impairment.  Tr. 159.  LCSW Ruplin diagnosed Plaintiff with recurrent major depressive disorder exacerbated by stress at work and in her marriage and assessed her GAF score at 58.  Tr. 159.

On September 30, 2004, Peter LeBray, Ph.D., completed a Psychiatric Review Technique (PRT) form at the request of DDS[5] in which he found Plaintiff suffers from the nonsevere impairment of depression.  Tr. 117, 120.  Dr. LeBray opined Plaintiff's depression resulted in mild difficulties in maintaining concentration, persistence, or pace but not any other limitations.  Tr. 127.

On December 15, 2004, Dr. Wicher conducted a comprehensive psychodiagnostic evaluation of Plaintiff at the request of DDS. Tr. 165.  Dr. Wicher diagnosed Plaintiff with recurrent, moderate, major depressive disorder and assigned her a GAF score of 50.  Tr. 168.  Dr. Wicher found Plaintiff has mild to moderate deficits in concentration and persistence and mild deficits in social functioning.  Tr. 169.  As noted, Dr. Wicher opined Plaintiff's prognosis for improvement with medication and

---

[5] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

counseling "appear[s] fair."  Tr. 169.

After a thorough review of this record, the Court concludes the ALJ did not err when he rejected the opinion of LCSW Herzberg as to Plaintiff's GAF score because the ALJ provided legally sufficient reasons supported by the record for doing so.

**B.    "Rule-out" Diagnoses of PTSD and Personality Disorder.**

Contrary to the ALJ's finding that there is not any evidence of Plaintiff experiencing a traumatic event, the record reflects Plaintiff attempted suicide at least once and was also subjected to childhood abuse.  Tr. 158, 165-66, 197.  In addition, Dr. Wicher found Plaintiff has some features of an underlying borderline personality disorder characterized by instability in mood and interpersonal relationships, problems controlling anger, and recurrent suicidal thoughts.  Tr. 169.  Dr. Wicher also found, however, that Plaintiff "does not clearly meet the full diagnostic criteria for this or any other personality disorder," which is a conclusion similar to that of LCSW Herzberg.  Tr. 169. Thus, both Dr. Wicher and LCSW Herzberg concluded they lacked sufficient information to diagnose Plaintiff with the mental conditions that she showed some symptoms of and for which they were evaluating her.

In any event, the Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).  When important medical evidence is incomplete, the

19  -  OPINION AND ORDER

ALJ has a duty to recontact the provider for clarification.

20 C.F.R. § 404.1527(c)(2).  *See also Brown v. Heckler*, 713 F.2d

441, 443 (9th Cir. 1983)(the ALJ has a "special duty to fully and

fairly develop the record" even when claimant is represented by

an attorney).

> When making disability determinations:

>> If the evidence is consistent but we do not
>> have sufficient evidence to decide whether
>> you are disabled, or if after weighing the
>> evidence we decide we cannot reach a
>> conclusion about whether you are disabled,
>> we will try to obtain additional evidence
>> . . . .  We will request additional existing
>> records, recontact your treating sources or
>> any other examining sources, ask you to
>> undergo a consultative examination at our
>> expense, or ask you or others for more
>> information.

20 C.F.R. § 404.1527(c)(3).

Here both LCSW Herzberg and Dr. Wicher reached conclusions

that there was evidence Plaintiff may suffer from PTSD and

personality disorder, but they did not have enough information to

form a clear diagnosis.

On this record, therefore, the Court concludes the ALJ erred

when he rejected LCSW Herzberg's opinion and did not develop the

record further regarding the "rule out" diagnoses of PTSD and

personality disorder.

**III. The ALJ did not err when he found Plaintiff's testimony not
     entirely credible.**

Plaintiff contends the ALJ improperly found her testimony

was not credible.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified she has difficulties with concentration and memory, and she often becomes confused.  Tr. 305-06.  She also stated she is afraid to leave her home and has panic attacks when she does leave her home, which cause her to "lose her

bowels." Tr. 306. Plaintiff also stated she feels like other people are "out to get her," and she does not get along with others, particularly authority figures. Tr. 314. In addition, Plaintiff testified she is fatigued all of the time. Tr. 307.

Plaintiff also testified she suffers from headaches five days each week that last from two hours to three days. Tr. 307. She stated she does not take any prophylactic medication for her headaches because she often cannot afford such medications and, in any event, they sometimes cause her symptoms to worsen. Tr. 307-08.

Plaintiff testified her UI causes her to need to use the restroom "at a moment's notice," and she wears pads to prevent her clothes from becoming soiled. Tr. 309. In addition, Plaintiff stated she often did not make it to the bathroom in time when she was still working and had to have clean clothes brought to her. Tr. 310.

Plaintiff testified she does some household chores, but it makes her tired to do them. Tr. 312.

As noted, the ALJ found Plaintiff has the severe impairments of depression and obesity and the nonsevere impairments of asthma, COPD, emphysema, migraine headaches, and UI. Tr. 18. The ALJ acknowledged these impairments could be expected to cause some symptoms. Tr. 23. Accordingly, the Court finds Plaintiff has satisfied the first two prongs of the *Cotton* test by

providing evidence of impairments that could reasonably cause her some degree of pain.  799 F.2d at 1407.  Because the ALJ did not determine Plaintiff is malingering, the ALJ must provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony.  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's testimony was not entirely credible on the ground that her alleged symptoms of depression are inconsistent with the medical evidence.  Tr. 25.  For example, on April 29, 2004, PMHNP De Baldo noted Plaintiff's symptoms appeared to be improving with medication.  Tr. 147.  On May 5, 2004, LCSW Ruplin noted Plaintiff did not show any indication of psychotic processing or cognitive impairment. Tr. 159.  On September 30, 2004, Dr. LeBray opined Plaintiff's depression causes mild difficulties in maintaining concentration, persistence, or pace but did not appear to cause any other limitations.  Tr. 127.  On December 15, 2004, Dr. Wicher found Plaintiff has mild to moderate deficits in concentration and persistence and mild deficits in social functioning.  Tr. 169. Dr. Wicher opined Plaintiff's prognosis for improvement with medication and counseling "appear[s] fair."  Tr. 169.  Finally, in an October 18, 2006, chart note, Dr. Paysse noted Plaintiff reported her depression is "overall stable."  Tr. 191.

The ALJ also found Plaintiff's testimony is not consistent with her activities of daily living.  Tr. 25.  For example, even

23  -  OPINION AND ORDER

though Plaintiff testified she does not drive, does not leave the
house, and is easily fatigued, she also stated she takes
30-minute walks daily, shops for groceries, and goes fishing.
Tr. 76, 144, 191.  In addition, Plaintiff's daughter, Connie
Graybeal, stated in a Third-Party Adult Function Report completed
September 22, 2004, that Plaintiff performs normal household
chores, cooks, drives a car, shops once a week, uses a computer,
and goes fishing.  Tr. 100-02.

On this record, the Court concludes the ALJ did not err when
he found Plaintiff's testimony was not entirely credible because
the ALJ provided legally sufficient reasons supported by the
record for doing so.

## REMAND

The decision whether to remand this case for further
proceedings or for the payment of benefits is a decision within
the discretion of the Court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen v. Chater*, 80 F.3d 1273, 1292
(9th Cir. 1996).

24  -  OPINION AND ORDER

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178.  The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

At the request of counsel in this case, Dr. Paysse completed questionnaires at the request of Plaintiff's counsel on January 29, February 4, and April 19, 2007, that were submitted to the Appeals Council after the ALJ had rendered his opinion. Tr. 280.  Plaintiff also submitted a 1993 report from Thomas Phipps, M.D., and a 1996 medical report from Donald Lange, Ph.D., to the Appeals Council as medical background.  Tr. 290-97. Plaintiff maintains this medical evidence establishes she is disabled.

The Court may properly evaluate all of the evidence in the record, including new evidence submitted to and considered by the Appeals Council after the ALJ has issued his opinion. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  *See also*

25  -  OPINION AND ORDER

20 C.F.R. § 404.970(b).  In regard to such evidence, however, the Ninth Circuit held in *Harman v. Apfel*:

> While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law.  The appropriate remedy in this situation is to remand this case to the ALJ; the ALJ may then consider, the Commissioner then may seek to rebut and the VE then may answer questions with respect to the additional evidence.

211 F3d 1172, 1180 (9th Cir. 2000).

Here the 1993 and 1996 medical reports of Drs. Phipps and Lange are dated well before Plaintiff's alleged onset date of May 11, 2004, and, therefore, are "of limited relevance" to this matter.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008)(citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)).  Accordingly, they do not establish, standing alone, that Plaintiff is disabled.

In Dr. Paysse's questionnaires, she indicated Plaintiff suffers from anxiety disorder, depression, hypothyroidism, mild cognitive disorder, hyperlipidemia, asthma, and overactive bladder.  Tr. 280.  Dr. Paysse also completed an RFC of Plaintiff in which she found Plaintiff may never lift any weight frequently but can lift less than ten pounds occasionally; can stand or walk

26  -  OPINION AND ORDER

for three hours and sit for six hours with normal breaks; has
limitations in pushing and pulling because of shortness of
breath; can occasionally climb, balance, stoop, kneel, crouch,
crawl, handle, finger, or feel, but can never reach; must avoid
frequent exposure to extreme cold and heat, wetness, humidity,
noise, and vibration; must avoid all exposure to fumes, odors,
dusts, gases, and poor ventilation; and must avoid all exposure
to hazards; and would miss more than two days per month from work
because of fatigue.  Tr. 282-83.  In addition, Dr. Paysee found
Plaintiff suffers from anxiety disorder and affective disorder
characterized by loss of interest in activities, sleep
disturbance, psychomotor agitation or retardation, feelings of
guilt or worthlessness, decreased energy, thoughts of suicide,
and difficulty concentrating or thinking; has marked limitations
in concentration, persistence, or pace; moderate limitations in
social functioning and activities of daily living, and has
experienced repeated episodes of decompensation.  Tr. 285-86.
Thus, Dr. Paysee's opinions in the questionnaires support
Plaintiff's position.  The Court, therefore, finds remand is
necessary to enable the ALJ to consider Dr. Paysse's additional
conclusions for a complete evaluation as to whether Plaintiff is
disabled.

       In addition, because the Court has found the ALJ erred when
he found Plaintiff's UI is not a severe impairment, found

Plaintiff's hypothyroidism is not a medically determinable impairment, and improperly rejected LCSW Herzberg's "rule out" diagnoses of PTSD and personality disorder, there are "outstanding issues that must be resolved before a determination of disability can be made."

Accordingly, the Court concludes a remand of this matter is necessary for further administrative proceedings consistent with this Opinion and Order.


<u>CONCLUSION</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil

28  -  OPINION AND ORDER

Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006
(Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*,
450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future
application for attorneys' fees under § 406(b) is filed "within a
reasonable time" as required under Rule 60(b)(6), the Court
orders as follows:  If the Commissioner finds Plaintiff is
disabled on remand and awards Plaintiff past-due benefits and if,
as a result, Plaintiff intends to submit such application for
attorneys' fees under § 406(b), Plaintiff shall submit any such
application within 60 days from receipt of the Notice of Award by
the Commissioner.

        IT IS SO ORDERED.

        DATED this 14th day of January, 2009.


                            /s/ Anna J. Brown

                            _____
                            ANNA J. BROWN
                            United States District Judge


29  -  OPINION AND ORDER